UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY CHRISTEPHORE,

                  Plaintiff,                CASE NUMBER: 11-13547
                                                  HONORABLE VICTORIA A. ROBERTS

v.

COMMISSIONER OF SOCIAL
SECURITY,

                  Defendant.

_____/

## <u>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING CASE TO ADMINISTRATIVE LAW JUDGE PEREZ</u>

**I.    INTRODUCTION**

       This matter is before the Court on the parties' cross-motions for summary judgment.  Magistrate Judge Charles E. Binder recommends that the Court grant Defendant's motion and deny Plaintiff's motion.  The Court heard oral argument on Christephore's objections to Magistrate Judge Binder's Report and Recommendation ("R & R") on Monday, June 11, 2012.

       The ALJ committed three errors when evaluating Plaintiff's disability claim; these errors require reversal and remand.  First, the ALJ failed to articulate the reasons for finding that Christephore's HIV-related impairments do not meet or medically equal those listed in 14.08; he did not even mention the relevant listing.  Second, the ALJ failed to consider and discuss the relevant factors when weighing Christephore's credibility; thus, he did not adequately explain his reasons for finding Plaintiff not credible.  *See* 20 C.F.R. § 404.953.  Finally, the ALJ's RFC assessment is not

1

supported by the evidence in the record.

For these reasons, Court **DECLINES TO ADOPT** the Magistrate Judge's recommendation.  The Court **GRANTS** Plaintiff's motion for summary judgment to the extent he seeks a remand, and **REMANDS** the case to the Administrative Law Judge ("ALJ") for further proceedings consistent with this opinion.

## II.    PROCEDURAL HISTORY AND FACTS

On April 2, 2010 Christephore filed a Title II application for disability insurance benefits ("DIB") and a Title XVI application for supplemental security income ("SSI"). (Tr. 10).  He amended his original application to allege a disability onset date of October 8, 2008.  (*Id.*).  Christephore's clams were initially denied on July 23, 2010; he filed a written request for hearing on July 30, 2010.  (*Id.* at 10).  ALJ Perez held a hearing on April 12, 2011; Christephore testified, along with vocational expert ("VE") Jennifer Turecki.  (*Id.*).

In a decision dated April 29, 2011, ALJ Perez determined that Christephore is not disabled within the meaning of the Social Security Act.  (*Id.* at 11).  Applying the five-step sequential evaluation process outlined in the social security regulations (*see id.* at 11-12), the ALJ found that Christephore: (1) meets the insured status requirements of the Security Act through December 31, 2011; (2) has not engaged in substantial gainful activity since October 8, 2008, the "alleged onset date" (Step One); (3) has the following severe impairments–HIV, major depressive disorder, adjustment disorder, and anxiety (Step Two); (4) does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appx.

2

1 ("the Listing") (Step Three); (5) has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations–claimant requires jobs that provide for routine production and stress, simple job assignments, unskilled jobs, and occasional contact with the public and co-workers; (6) is unable to perform any past relevant work (Step Four); and (7) can perform jobs that exist in significant numbers in the national economy given his age, work experience, and RFC (Step Five).  (*Id.* at 12-19).

On May 5, 2011, Christephore requested that the Appeals Council review the ALJ's decision.  (*Id.* at 5).  The Appeals Council denied his request for review.  (*Id.* at 1-4).  The ALJ's decision then became the final decision of the Commissioner.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004) (citing *Miles v. Chater*, 84 F.3d 1397, 1399 (11th Cir. 1996)).

On August 14, 2011, Christephore sought judicial review of the Commissioner's unfavorable decision.  (Doc. # 1).  On August 15, 2011, the Court referred the matter to Magistrate Binder for issuance of an R & R under E.D. Mich. LR 72.1(b)(3).  The parties filed cross-motions for summary judgment and on March 15, 2012 Magistrate Binder issued his R & R recommending that the Court grant the Commissioner's Motion and affirm the decision of the ALJ.

## III.   STANDARD OF REVIEW

The Court will affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole.  *Jones v. Comm'r Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citing 42 U.S.C. § 405(g)).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable

3

mind might accept as adequate to support a conclusion." *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could also support the opposite conclusion.  *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

This deferential standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  Thus, if the Commissioner's decision is supported by substantial evidence, it must stand, regardless of whether the Court would resolve the disputed facts differently.  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In reviewing the Commissioner's decision, the Court may consider only the record that was before the ALJ, and cannot review the evidence de novo, weigh the evidence, or make credibility determinations.  *See id.*

In addition to considering whether the Commissioner's decision is supported by substantial evidence, the Court must consider whether he applied the proper legal standards.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 282 (6th Cir. 2009). "Even if supported by substantial evidence . . . a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

Review of a magistrate judge's recommendation on a dispositive motion is de novo.  28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 72 (b)(3). "The district judge may accept,

reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72 (b)(3).

## IV.   ARGUMENT

The Social Security Act provides disability benefits to a wage earner if he establishes that his impairments prevent him from performing any substantial gainful activity because of certain medically determinable physical or mental impairments.  42 U.S.C. § 423(d)(1)(A).  There are five factors the Social Security Administration uses to determine if a claimant is disabled and eligible for benefits, known as the "five-step sequential evaluation process."  20 C.F.R. § 404.1520.   Plaintiff must establish that: (1) he is not presently engaged in gainful employment; (2) he suffers from a severe impairment; and (3) the Listing and was of sufficient duration.  *Id.*  If he meets his burden at step three, the inquiry ends and he is disabled within the meaning of the Social Security Act ("the Act").  *Id.* § 404.1520(d).

If Plaintiff does not meet his burden at step three, he may do so at step four by proving he does not have the "residual functional capacity" ("RFC") to perform past work.  *Jones*, 336 F.3d at 474.  If Plaintiff satisfies his burden, the burden shifts to the Commissioner, at step five, to show there is other work available in the economy that the claimant can perform.  *Id.*  "To meet this burden, there must be 'a finding supported by substantial evidence that [claimant] has the vocational qualifications to perform specific jobs.'"  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 529 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). This evidence may be in the form of Vocational Expert ("VE") testimony, but only if the hypothetical question posed to the

5

expert accurately portrays claimant's individual physical and mental impairments.  *Id.*

### A.    Plaintiff's Claims

Plaintiff Rodney Christephore seeks DIB and SSI from October 8, 2008 forward, claiming he suffers severe impairments which prevent him from engaging in substantial gainful activity.  *See* 42 U.S.C. § 423(d)(1)(A).

Christephore was born on October 8, 1958; he was fifty years old on October 8, 2008, the alleged onset date of disability.  (Tr. 12).  He is approaching advanced age. (*Id.* at 40).  He has a high school education and has worked in the past as a customs broker.  (*Id.* at 12, 40).  He has not worked since the alleged onset date.  (*Id.* at 13).  At the time of the hearing on his disability claims, Christephore was homeless.  (*Id.* at 32).

Christephore was diagnosed with HIV in 1996 and suffers from major depressive disorder, adjustment disorder, and anxiety.  (*Id.* at 13, 15). At the hearing Christephore testified he also struggles with back and leg pain.  (*Id.* at 33).  He related that his back pain stems from heavy lifting he did while in the military, causing him to strain his back. (*Id.* at 35).  He takes Vicodin for pain management.  (*Id.*).  He testified he has trouble sitting for more than fifteen minutes at a time because of the pain in his back and numbness in his legs; he said he can stand for only fifteen minutes as well.  (*Id.* at 37). He testified he can walk about two blocks before he has to stop and rest because of pain and shortness of breath.  (*Id.* at 37-38).  Christephore testified he can lift approximately thirty pounds.  (*Id.* at 38).

Christephore testified that some of his HIV-related symptoms include: fatigue; abnormal use of the bathroom; inability to concentrate; skin lesions and infections; and oral candidiasis (thrush).  (*Id.* at 33-34).  Christephore said his HIV medication makes

6

him drowsy and gives him headaches, stomach pain, and "explosive diarrhea." (*Id.* at 36-37). He said he has to use the restroom as a result of his diarrhea about three times per day. (*Id.* at 37). He said his depression and post-traumatic stress related symptoms include anxiety attacks and night traumas. (*Id.* at 34).

Christephore testified he also suffers from severe sleep apnea. (*Id.* at 34, 36). He stated, "I can only sleep for about two hours. My breathing cuts off, so I'm on a–I have a machine as well as oxygen. So that leaves me I'm just about tired all the time." (*Id.* at 36). He said he has to take naps during the day because his sleep apnea deprives him of energy. (*Id.*).

### B.   Magistrate Judge's Recommendation

Magistrate Judge Binder recommends that the Court grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment. (Doc. # 11). The Magistrate Judge concludes that, contrary to Plaintiff's assertion, the ALJ did not adopt the role of a medical doctor and did not ignore the objective medical evidence to conclude that Plaintiff is able to work. (Doc. # 11 at 10-11). He observes that the ALJ devoted almost an entire page to a discussion of evidence received from one of Christephore's doctors, Dr. Knysz. (*Id.* at 11). The Magistrate says there is no medical opinion for the ALJ to have weighed. (*Id.*).

Magistrate Judge Binder then addresses the ALJ's determination as to Christephore's credibility. He observes that the ALJ "can be said to have partially discounted . . . Plaintiff's statement that he needs to nap throughout the day." (*Id.* at 12). Magistrate Binder believes the ALJ considered the appropriate factors to hold that Christephore was not entirely credible with respect to his fatigue. (*Id.* at 14). He says

7

there is no evidence to support Christephore's claim that he must nap throughout the day besides his own self-serving testimony. (*Id.*). He says, "In addition, Plaintiff's own submission to the Commissioner stated that he did not have any side effects from his medications, such as fatigue." (*Id.*). He concludes that Christephore's stated daily activities and abilities -- including personal care, cooking, light cleaning, use of public transportation, driving, shopping, handling finances, reading and tv watching, socializing, attending therapy sessions, and attending church -- are inconsistent with a finding of disabling fatigue. (*Id.*)

The Magistrate Judge says, for the same reason "the RFC findings given in the hypothetical presented to the VE are also supported by substantial evidence." (*Id.*). Magistrate Judge Binder further states that the modest treatment Christephore received to deal with his depression and the fact that he completed his service plan with some improvement suggest his mental condition is not disabling. (*Id.* at 15).

## C.   Christephore's Objections

Christephore has five objections to the Magistrate Judge's R & R. First, he objects to the Magistrate Judge's conclusion that the ALJ summarized all relevant medical evidence, did not discount any treating source opinion evidence, and did not adopt the role of medical doctor. He says the ALJ's entire decision is based on the medical opinions of Sunghee Nam, but "Nam is not a physician at all." (Doc. # 12 at 2).

Second, Christephore says the Magistrate Judge's conclusion that the ALJ properly rejected the opinion of his counselor, Jason Jordan, at the Imani Fellowship is incorrect. Christephore refers to Jordan as a "treating physician," even though he is a

social worker, not a doctor.  He later acknowledges that a counselor is not a "medical source," but says because Jordan worked as part of a treatment team, and treating psychiatrist Dr. Knysz signed off on his examination, his opinion should have been weighed.  He says the ALJ, nevertheless, failed to give reasons for rejecting Jordan's opinion and to  "explain precisely how those reasons affected the weight accorded . . . ." (Doc. # 12 at 2-6).

Third, Christephore contends the Magistrate Judge fails to address his argument that the ALJ completely ignored Step Three and failed to evaluate his HIV in relation to Listing 14.08.  Christephore says the ALJ does not give any rationale for finding that his HIV does not meet of medically equal the listing, only conclusory statements.  He asserts, "Defendant attempts to now evaluate . . . Plaintiff under the listing, however, the problem is not that the ALJ erred in his analysis, he simply failed to do the analysis." (Doc. # 12 at 7).

Fourth, Christephore believes the Magistrate Judge errs in upholding the ALJ's credibility determination.  He says the Magistrate Judge lists the numerous factors to be considered by an ALJ when assessing a claimant's credibility, but the only factor the ALJ took into account was his ability to perform daily activities.  He says both the ALJ and Magistrate Judge mischaracterize his daily activities.  He says that neither the ALJ nor the Magistrate Judge address his severe medication side effects when assessing credibility.

Finally, Christephore says the Magistrate Judge fails to evaluate the ALJ's RFC determination.  Christephore then argues that ALJ Perez does not accurately portray his physical and mental impairments in the RFC.  He say the RFC is "completely

controverted by both the treating and non-treating medical sources."  (Doc. # 12 at 10).

As discussed below, three of Christephore's objections have merit.

## V.   ANALYSIS

### A.   The ALJ erred at Step Three by failing to evaluate or even mention Listing 14.08 (HIV Infection) when determining whether Christephore has an impairment that meets or medically equals an impairment found in the Listing of Impairments.

Christephore says the Magistrate failed to address his argument that the ALJ failed to evaluate (or even mention) the relevant listing–14.08 (HIV infection) when determining medical equivalence at Step Three.  He contends, "There is no discussion of any relevant objective medical evidence in the decision, no discussion of the factual basis for the decision, and not a single discussion in the decision of special factors such as medication side effects."  (Doc. # 12 at 6).  He says the ALJ "completely ignored Step Three in the sequential analysis."  (*Id*.).

The Commissioner responds that the ALJ's Step Three analysis is sufficient because he explicitly states Christephore's HIV does not meet or medically equal the criteria of Listing 14.00, Immune System Disorder, which includes Listing 14.08.  (Doc. # 15 at 4).

Under a theory of presumptive disability, a claimant is eligible for benefits if he has an impairment that meets or medically equals an impairment found in the Listing. The Listing describes impairments that are severe enough to prevent a claimant from doing any gainful activity.  20 C.F.R. § 404.1425(a).  If a claimant cannot show that he meets a listed impairment, he may be able to establish that his impairment "is at least equal in severity and duration to the criteria of any listed impairment."  *Id.* §

10

404.1526(a).  When considering presumptive disability at Step Three, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review.  *Reynolds v. Comm'r*, 424 F. App'x 411, 416 (6th Cir. 2011).

While the ALJ identified Plaintiff's HIV as a severe impairment at Step Two, he failed to discuss the relevant listing -- 14.08 -- in his Step Three analysis.  The Commissioner emphasizes that the ALJ expressly stated Plaintiff's impairments do not meet or medically equal the criteria of 14.00 (Immune System Disorders).  This is insufficient.

The ALJ does not evaluate Plaintiff's physical symptoms in relation to those described in 14.00 and does not articulate his reasons for finding that Plaintiff's symptoms do not meet or equal those criteria.  His conclusory, one-sentence statement that Plaintiff's impairments do not meet or medically equal the criteria of 14.00 is contrary to the requirement that ALJs explain the reasons for their decisions.  *See* 5 U.S.C. § 557(c); 20 C.F.R. § 404.953.  The ALJ's treatment of Christephore's HIV at Step Three is in stark contrast to the attention he paid to Christephore's  mental impairments.  The ALJ mentions and explicitly discusses the criteria of listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders); he says Christephore does not meet these criteria and devotes six paragraphs to explaining his rationale.

At the hearing the Commissioner argued the Court can "assume" or "infer" that the ALJ did not find Christephore's HIV-related impairments severe enough to meet or equal the HIV Listing because the ALJ went on to Step Four.  The Commissioner argued that the evidence discussed at other steps, including evidence that

11

Christephore's HIV is under control, supports the ALJ's determination at the third step.

This argument misses the mark; it is not the Court's job to conduct a *de novo* review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. Moreover, it is the ALJ's rationale that is under review, not defense counsel's.

ALJ Perez did not apply the correct legal standard; he essentially skipped an entire step of the necessary analysis by failing to discuss Christephore's HIV-related and other physical impairments in relation to the relevant listings. *See, e.g.*, *Reynolds*, 424 F. App'x at 415-16 (reversing an ALJ's disability determination and remanding for further review where the ALJ erred at Step Three by failing to discuss the claimant's physical impairments in relation to the relevant listing, and concluding that correction of the error is not merely a "formalistic matter of procedure").

The ALJ's perfunctory analysis of Christephore's physical impairments at Step Three is beyond meaningful review. *See, e.g.*, *Burnett v. Comm'r Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) ("Because we have no way to review the ALJ's hopelessly inadequate step three ruling, we will vacate and remand the case for a discussion of the evidence and an explanation of the reasoning supporting a determination that Burnett's 'severe' impairment does not meet or is not equivalent to a listed impairment."); *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (holding the ALJ's conclusory determination that the claimant's impairment did not meet or equal a listed impairment, without a discussion of the evidence or his reasons for determining that appellant was not disabled at step three, was "beyond meaningful judicial review"); *Brown v. Bowen*,

794 F.2d 703, 708 (D.C. Cir. 1986) ("The judiciary can scarcely perform its assigned review function, limited though it is, without some indication not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored.").

Importantly, the ALJ overlooked the fact that the immune systems disorders listing is divided into three categories: autoimmune disorders; immune deficiency disorders (excluding HIV); and HIV infection.  HIV is specifically addressed in 14.00F and 14.08.  Listing 14.08 is further broken down into subsidiary lists of impairments (A-K), only one of which is required for a claimant to meet the listing.  The ALJ failed to mention or discuss 14.00F and 14.08A-K, and to evaluate Plaintiff's symptoms and the side effects of his HIV medication in relation to these listings.  It was not Christephore's job to point the relevant listings out to the ALJ; it was the ALJ's job to identify and address them.  *See Burnett*, 220 F.3d at 120 n. 2 ("Putting the responsibility on the ALJ to identify the relevant listed impairment(s) is consistent with the nature of social security disability proceedings which are inquisitorial rather than adversarial and in which it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." (citations and quotation marks omitted)).  Thus, ALJ Perez failed to identify the standard to be applied and to apply that standard.  It is impossible to determine whether substantial evidence exists to support the ALJ's third step evaluation.

The Fourth Circuit, in *Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986), ordered that the district court remand a social security case where the ALJ made a similar mistake.  There, the court held that an ALJ's analysis of a disability claimant's arthritis

13

was beyond meaningful review where the ALJ mentioned section 1.01 of 20 C.F.R. § 404, Subpart P, Appendix 1 at the third step but failed to cite or address any of the four subsidiary lists of impairments included in that section. *Id.* at 1172-73. The court held:

> [T]he decision failed to identify the standard to be applied. The ALJ referred to section 1.01, but section 1.01 actually includes four subsidiary lists of impairments: section 1.02, "active rheumatoid arthritis and other inflammatory arthritis;" section 1.03, "arthritis of a major weight-bearing joint;" section 1.04, "arthritis of one major joint in each of the upper extremities;" and section 1.05, "disorders of the spine." The ALJ did not explain which of those listed impairments were considered to be relevant. He also failed to compare Cook's symptoms to the requirements of any of the four listed impairments, except in a very summary way. . . . The ALJ should have identified the relevant listed impairments. He should then have compared each of the listed criteria to the evidence of Cook's symptoms. Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination.

*Id.* at 1173.

Likewise, this case is similar to the Sixth Circuit case *Reynolds.* In *Reynolds*, a disability claimant appealed from the denial of her application for SSI and DIB, arguing that her musculoskeletal problems, emotional impairments, and obesity equaled a Listed Impairment. 424 F. App'x at 413. The Sixth Circuit held that the ALJ erred at Step Three by failing to analyze the claimant's physical condition in relation to the Listed Impairments. *Id.* at 416. The Sixth Circuit said, "Put simply, [the ALJ] skipped an entire step of the necessary analysis. He was required to assess whether Reynolds met or equaled a Listed Impairment . . . but did not do so." *Id.* The court observed that the plaintiff did not raise this objection below and generally arguments not raised are abandoned, but reversed and remanded anyway, noting that "this rule is prudential and not jurisdictional . . . ." *Id.*

As in this case, the ALJ in *Reynolds* found both a physical and mental

14

impairment at Step Two.  *Id.* at 415.  But at Step Three, he analyzed only the plaintiff's

mental impairment in relation to the relevant listing.  *Id.*  The court found that the mental

impairment analysis and conclusion clearly met the substantial evidence standard, but

the dearth of analysis regarding the plaintiff's back pain required remand:

> [O]nce he completed his analysis under section 12.00, the ALJ simply
> went on to the next step in the 5-step analysis–determining residual
> functional capacity.  No analysis whatsoever was done as to whether
> Reynolds' physical impairments (all summed up in his finding of a severe
> "back pain" impairment) met or equaled a Listing under section 1.00,
> despite his introduction concluding that they did not.

*Id.* at 415.

The *Reynolds* court addressed whether the ALJ's error was harmless:

> The ALJ's error was not harmless, for the regulations indicate that if a
> person is found to meet a Listed Impairment, they are disabled within the
> meaning of the regulations and are entitled to benefits; no more analysis is
> required.  20 C.F.R. § 404.1520(a)(4)(iii).  Therefore, if the ALJ had
> properly analyzed Step Three, and had found Reynolds met Listing 1.04,
> she would receive benefits regardless of what the ALJ's conclusion would
> have been at Steps Four and Five.  Additionally, in this case, correction of
> such error is not merely a formalistic matter of procedure, for it is possible
> that the evidence Reynolds put forth could meet the listing.  In short, the
> ALJ needed to actually evaluate the evidence, compare it to Section 1.00
> of the Listing, and given an explained conclusion, in order to facilitate
> meaningful review.  Without it, it is impossible to say that the ALJ's
> decision at Step Three was supported by substantial evidence.

*Id.* at 416.  In so holding, the Sixth Circuit cited both *Clifton* and *Burnett* with approval.

In particular, the court said, "As the Third Circuit explained, 'because we have no way to

review the ALJ's hopelessly inadequate step three ruling, we will vacate and remand the

case for a discussion of the evidence and an explanation of reasoning' supporting the

determination that Reynold's severe impairments do not meet or medically equal a

listed impairment."  *Id.*  (quoting *Burnett*, 220 F.3d at 120).

15

Several district courts in this Circuit have cited and/or discussed *Reynolds* to support a remand in the face of an incomplete Step Three analysis.  *See, e.g., Hunter v. Astrue*, No. 1:09 CV 2790, 2011 WL 6440762, at *3-4 (N.D. Ohio Dec. 20, 2011) (holding that a plaintiff is entitled to a remand where the ALJ made only a conclusory finding at the third step with respect to plaintiff's degenerative disc disease without discussing the record evidence concerning that disease in relation to the relevant listing); *Morgan v. Astrue*, No. 10-207-KSF, 2011 WL 2292305, at *4-7 (E.D. Ky. June 8, 2011) (where plaintiff had both physical and mental impairments, the ALJs failure to analyze plaintiff's physical impairments at Step Three makes review of the ALJ's decision impossible and the error is not harmless because it denied plaintiff an important procedural safeguard); *May v. Astrue*, No. 4:10CV1533, 2011 WL 3490186, at *8-10 (N.D. Ohio June 1, 2011) (Report and Recommendation) (holding the ALJ erred, requiring remand, where he failed to analyze plaintiff's physical condition in relation to the listed impairments and the court refuses to entertain the Commissioner's "post hoc rationale" for the ALJ's decision because "it is the opinion given by an administrative agency . . . that is under the Court's consideration" (citations and quotation marks omitted)), *adopted,* No. 2011 WL 3490229 (N.D. Ohio Aug. 10, 2011).

The Court will not follow the Commissioner's suggestion that it divine what the ALJ might have been thinking at Step Three, nor will it entertain the Commissioner's post hoc rationale for the ALJ's Step Three decision.  As the district court recently noted in *Risner v. Comm'r of Soc. Sec.*,

> [W]here, as here, the ALJ fails to complete a required step in the five-step analysis, the proper course is to remand the case for him to complete the task.  Requiring a reasoned and explained conclusion is not merely a

16

> formalistic requirement.  On the contrary, as noted by the Sixth Circuit, it is
> a necessary component for this Court to ascertain whether the ALJ's
> decision was supported by substantial evidence.  It is not for the
> Magistrate Judge to step into the shoes of the ALJ and complete his job
> for him.  The ALJ should, in the first analysis, assess whether the
> evidence put forth shows that Plaintiff meets of equals a Listing.  Should
> he determine [he] does not, the ALJ must explain his decision with a
> discussion and analysis of the evidence.

No. 1:11-cv-036, 2012 WL 893882, at *5 (S.D. Ohio Mar. 15, 2012); *see also*

*Hakkarainen v. Astrue*, No. 1:10-cv-2463, 2012 WL 398595, at *13 (N.D. Ohio Jan. 19,

2012) (Report and Recommendation) ("To the extent that the Commissioner argues that

evidence otherwise supports the conclusion that the claimant's rheumatoid arthritis did

not meet or medically equal Listing 14.09, such post hoc rationale is not persuasive, as

the ALJ's rationale is under consideration, not defense counsel's."), *adopted,* 2012 WL

396970 (N.D. Ohio Feb. 7, 2012).

Accordingly, the Court will remand to the ALJ for a proper Step Three analysis.

**B.     The ALJ improperly evaluated Christephore's credibility.**

On remand, the ALJ must also revisit his credibility determination.  Christephore

says that neither the Magistrate nor the ALJ considered all of the appropriate factors

when weighing his believability, nor did they evaluate the side effects of his medication.

He says the daily activities he engages in do not support the conclusion that he can

work an eight hour day on a sustained basis.

The Commissioner says Christephore's objection with regard to his daily

activities should be rejected because "it is underdeveloped."  (Doc. # 15 at 6).  "Plaintiff

merely disagrees with the discussion of his daily activities and describes no evidence

showing that he was more limited than found by the ALJ," the Commissioner contends.

17

(*Id.*).  The Commissioner also observes that the ALJ did, in fact, discuss the side effects of Christephore's medications.

The ALJ acknowledged Christephore's complaints, including his fatigue, need to nap throughout the day, back and leg pain, frequent use of the bathroom, skin lesions and infections, thrush, and anxiety, as well as the side effects of his HIV medication, such as drowsiness, headaches, stomach aches, and diarrhea. (Tr. 15).  However, he found that Christephore's testimony about the limiting effects of these problems was not completely credible in light of his daily activities and the objective medical findings.  (*Id.* at 17).

An ALJ is not required to accept a disability claimant's subjective complaints of pain and other limitations; he may properly consider the claimant's credibility when making a disability determination.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  "It is for the [Commissioner], not a reviewing court, to make credibility findings.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  If an ALJ finds a claimant's testimony not credible, he must state his reasons.  *Id.*

The Magistrate Judge sets forth the six factors ALJs are to consider when disability claimants complain of symptoms that "suggest a greater severity of impairment than can be shown by objective medical evidence alone."  20 C.F.R. § 404.1529(c)(3); (*see* Doc. # 11 at 13-14).  These include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of a claimants pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication a claimant has taken; (5) treatment, other than medication, a claimant receives or has received for relief from pain or other symptoms; and (6) any

18

measure a claimant uses or has used to relieve pain or other symptoms.  20 C.F.R. §

404.1529(c)(3).  The Magistrate says, "I suggest that the ALJ considered the

appropriate factors when he found that Plaintiff was not entirely credible."  (Doc. # 11 at

14).

The Court is uncertain how the Magistrate arrives at this suggestion.  The ALJ's

decision is wholly lacking in the type of detail required by § 404.1529(c)(3).  While the

ALJ acknowledges Christephore's complaints that, if credible, would severely restrict his

ability to work -- such as an inability to lift more than five pounds without pain, an

inability to walk more than one block before his pain became unbearable, and severe

fatigue and drowsiness from HIV medications that make it extremely difficult for him to

concentrate and stay awake throughout the day -- he fails to discuss these complaints

in any meaningful way and to give specific reasons for finding them incredible.  The

ALJ's conclusory assertion that "Claimant's allegations have been considered and found

inconsistent with the objective medical findings in the record," (Tr. 17) is beyond

meaningful review.

The ALJ does not mention the § 404.1529(c)(3) factors and when the Magistrate

Judge did so for him (albeit without any evaluation), the Magistrate Judge improperly

stepped into the shoes of the ALJ.  It is not this Court's job to review the Magistrate

Judge's credibility assessment.  The ALJ must make that assessment in the first

instance, and the Court must review the *ALJ's* credibility determination.  Because the

ALJ failed to follow the social security regulations and failed to adequately explain his

credibility determination, he must revisit that determination on remand.

**C.    The ALJ's Residual Functional Capacity determination is not**

19

**supported by substantial evidence.**

Substantial evidence does not support the ALJ's RFC determination at Step Four.  Christephore says the ALJ did not factor his limitations in concentration, persistence, and pace into the RFC determination.  Nor did the ALJ accurately portray his physical impairments, Christephore says.  He contends, "Plaintiff suffers from advanced HIV and severe lumbar back issues that would not allow claimant the exertional prowess to lift undeterminable amounts . . . ."  (Doc. #12 at 10).

The Commissioner responds that Christephore cites no specific evidence to support any aspect of his argument, and it should be deemed waived.  The Commissioner says Christephore's contention that the RFC does not adequately account for his moderate deficiency in concentration, persistence, and pace is without merit because the ALJ found he was limited to unskilled jobs that provided for only routine production and stress and simple assignments.

Social Security Ruling 96-8p addresses RFC assessments in disability determinations. It explains,

> RFC is what an individual can still do despite his or her limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities.

SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  It is "a function-by-function assessment based upon all the relevant medical evidence of an individual's ability to do work-related activities."  *Id.* at *3.

SSR 96-8p details the difference between exertional and nonexertional functions.

20

"Exertional capacity addresses an individuals limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* at *5. "Each function must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours'), even if the final RFC assessment will combine activities (e.g., 'walk/stand, lift/carry, push/pull')." *Id.* "Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions." *Id.* at *6. "It assesses an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision).  In addition to these activities, it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." *Id.*

ALJ Perez's RFC assessment reads as follows:

After careful consideration of the entire record, Claimant is found to have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Claimant requires jobs that provide for routine production and stress, simple job assignments, unskilled jobs, and occasional contact with the public and co-workers.

(Tr. 14).

Substantial evidence does not support the ALJ's conclusion that Christephore can perform work at all exertional levels.  While the Commissioner points to evidence in

21

the record that Christephore repeatedly denied to examining physicians that he suffered severe back, leg and joint pain, there is some contradictory evidence, including his complaints to his outside counselor, Mr. Jordan, and Dr. Nam's statement that some of his medically determinable impairments reasonably could be expected to produce pain. (*Id.* at 67). Christephore's testimony describing severe back pain (*Id.* at 35) is also supported by his degenerative disc disease diagnosis and prescription for Vicodin (*id.*). Although the ALJ did not find Christephore's degenerative disc disease "severe" at the second step, impairments which are not deemed severe must still be considered when assessing RFC.  *Id.* ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'  While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim.").

Moreover, Dr. Nam's July 21, 2010 RFC assessment places exertional and nonexertional limitations on Christephore.  (Tr. 67).  Dr. Nam says Christephore can occasionally lift and/or carry fifty pounds, while he can frequently lift and/or carry twenty-five pounds; he also places limits on Christephore's ability to stand, walk, sit, stoop (nonexertional), and crouch (nonexertional). (*Id.* at 68).  He explains these limitations are a result of Christephore's "[d]egenerative disc disease at lumbosacral level, with some limitation of ROM of lumbar spine."  (*Id.*).

In addition, just as the ALJ failed to provide a thorough analysis at the third step, the ALJ's RFC analysis is lacking in detail.  Social Security Ruling 96-8p sets forth "Narrative Discussion Requirements."  1996 WL 374184, at *7.  In relevant part, it

22

states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. . . .  In all cases in which symptoms, such as pain, are alleged, the RFC assessment must . . . [s]et forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work. . . . The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

*Id.* at *5.

ALJ Perez does not describe the maximum amount of each work-related function Christephore can perform in an eight hour day, five days a week, as Dr. Nam does.  Dr. Nam says Christephore can stand and/or walk about six hours in an eight hour workday and can sit (with normal breaks) for a total of about six hours in an eight hour work day. (Tr. 68).  The Sixth Circuit has held that while desirable, a function-by-function RFC analysis is not always required.  *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. Mar. 4, 2002) (citing *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)).  The *Delgado* court said an ALJ need not discuss "uncontested issues" or "those capacities for which no limitation is alleged." *Id.* at 547.  The *Delgado* court distinguished the case of *Diggdon v. Apfel*, 189 F.3d 477 (table), No. 98-5207, 199 WL 617702 (10th Cir. Aug. 16, 1999), where the Tenth Circuit remanded a claim because the ALJ did not indicate that he considered the claimant's

23

ability to meet each of the seven work-related exertional functions identified by SSR 96-8p. *Id.*

   With respect to Christephore's exertional (and two nonexertional) limitations, there are clearly contested issues; Christephore complains of severe back pain that affects his ability to lift, kneel, bend, stand, walk, reach, sit, and climb stairs. (Tr. 179). He says he can lift no more than five pounds, with some pain, and can walk only one block before he needs to rest for thirty to forty-five minutes due to pain. (*Id.*). Further, Dr. Nam found Christephore could perform work activity at only the medium exertional level, placing function-by-function restrictions on some of his activities, which the ALJ completely ignored. While the ALJ references some of these limitations, ultimately he does not include them in his own RFC assessment, and fails to indicate why.

   By concluding Christephore can perform "a full range of work at all exertional levels" (Tr. 14), the ALJ implicitly rejected Dr. Nam's medical opinion that Christephore can perform only medium, sedentary, and light work, which involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. *See* 20 C.F.R. § 404.1567(c). The ALJ found Christephore can engage in even "very heavy work," which involves occasionally lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to fifty pounds. *See generally Id.* § 404.1567. Such a drastic divergence from Dr. Nam's assessment requires an explanation. *See, e.g.*, *Evans v. Comm'r of Soc. Sec.*, No. 1:10-cv-779, 2011 WL 6960619, at *14 (S.D. Ohio Dec. 5, 2011) (Report and Recommendation) ("Simply listing some of the medical and other evidence contained in the record and setting forth an RFC conclusion without linking such evidence to the

24

functional limitations ultimately imposed in the RFC is insufficient to meet the 'narrative

discussion' requirement of SSR 96-8."), *adopted*, 2012 WL 27476 (S.D. Ohio Jan. 5,

2012); *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 880-81 (N.D. Ohio 2011) (noting that

an ALJ must not ignore evidence that does not support his RFC determination,

especially when that evidence, if accepted, would change his analysis, and remanding

where the ALJ failed to consider the only RFC assessment in the record when making

his own determination, thereby "substitut[ing] his medical opinion for that of a treating or

examining doctor" (citations and quotation marks omitted)).

This case is closer to *Diggdon* than *Delgado*. In *Diggdon*, the Tenth Circuit

observed:

> [T]he ALJ simply made the conclusory determination at the first phase of
> step four that claimant could perform light work that would allow her to
> change her position at will. The ALJ did not specify the evidence he relied
> upon to support his conclusion, in violation of the agency's regulations and
> rulings. See SSR 96-8p, 1996 WL 374184, at *3, *5. In evaluating
> claimant's RFC at the first phase of step four, the ALJ failed to assess her
> ability to perform each of the seven strength demands (sitting, standing,
> walking, lifting, carrying, pushing, and pulling); to discuss her ability to
> perform sustained work activities in an ordinary work setting on a regular
> and continuing basis; and to carefully compare her restrictions with the
> functional demands of light work as defined by the regulations. . . .
> Contrary to the ALJ's assertion, his RFC determination is not consistent
> with either the opinion of claimant's treating physician or her testimony
> with respect to her daily activities.

1999 WL 617702, at *3.

The ALJ's RFC assessment rejects Dr. Nam's exertional limitations without

explaining why Dr. Nam's opinion was not adopted, as required by SSR 96-8p.

Likewise, the ALJ should have explained why he rejected Christephore's complaints of

pain, as well as the limitations he placed on himself. He should have provided a logical

25

explanation of how any pain Christephore does experience impacts his ability to work.

He should have conducted a function-by-function analysis of Christephore's strength

demands, as contemplated by the social security rulings.

### D.    Christephore's other objections to the R & R lack merit

Christephore's argument that Dr. Nam is not a physician lacks merit.  At the

hearing, Christephore could not provide any support for this position.  On the other

hand, the Commissioner highlights medical forms in the record that identify Dr. Nam as

a physician and indicate Dr. Nam is licensed to practice medicine in the State of

Michigan, which it verified by searching the Michigan Department of Licensing and

Regulatory Affairs website.  (Doc. # 15 at 2). Finally, the Commissioner points the Court

to the American Medical Association's website, which indicates that Dr. Nam is a doctor

in Michigan with a specialty in "anatomical/clinical pathology." (*Id.*).  Furthermore,

Christephore's objection that Dr. Nam's is the only opinion on which the ALJ relies to

deny benefits is meritless.  The ALJ considers and discusses many opinions besides

that of Dr. Nam throughout his decision, included Drs. Knysz, Neal, Mahmood, and

Moten.  (Tr. 16-17).  Therefore, this objection lacks merit.

Lastly, Christephore says the Magistrate Judge's conclusion that the ALJ

properly rejected the opinion of his counselor, Jason Jordan, at the Imani Fellowship is

incorrect.  Christephore refers to Jordan as a "treating physician," even though he is a

social worker, not a doctor.  He later acknowledges that a counselor is not a "medical

source," but says because Jordan worked as part of a treatment team, and treating

psychiatrist Dr. Knysz signed off on his examination, his opinion should have been

weighed.  He says the ALJ nevertheless failed to give reasons for rejecting Jordan's

26

opinion and to "explain precisely how those reasons affected the weight accorded . . . ." (Doc. # 12 at 2-6).

Christephore also takes issue with the Magistrate Judge's determination that Jordan's conclusion that Christephore is unable to maintain meaningful employment is not entitled to any weight because it is an opinion on an issue reserved to the ALJ. *See* Soc. Sec. Rul. 96-5p, 61 Fed. Reg. 34471, 34474 (July 2, 1996) (although a medical source opinion on whether a claimant is able to work must not be disregarded, this is an administrative finding reserved to the Commissioner, and thus it is not "entitled to controlling weight" or "special significance"); *Turner v. Comm'r Soc. Sec.* 488, 493 (6th Cir. 2011) ("When a treating physician . . . submits an opinion on an issue reserved to the Commissioner–such as whether the claimant is 'disabled' or 'unable to work'–the opinion is not entitled to any particular weight."). He says, "the ALJ ought to have considered those aspects of the medical source statement that was (sic) not a conclusion of disability reserved for the Commissioner." (Doc. # 12 at 5).

The Commissioner responds that there is no treating medical source opinion in the record; Jordan, as a licensed social worker, is not an acceptable medical source as defined in 20 C.F.R. §§ 404.1513(a) and 416.913(a) and, consequently, his opinion is not a medical opinion. In addition, there is no evidence that Dr. Knysz and Jordan shared a close working relationship or that he co-signed Jordan's assessment such that Dr. Knysz can be said to have adopted the assessment as his own, argues the Commissioner. He says, Jordan's statement that Christephore could not maintain employment is not a medical opinion entitled to any special significance under §§ 404.1527(e), 416.927(e), and Jordan's only opinion other than this is Christephore is

27

limited in his ability to interact socially, which the ALJ accommodated by restricting him to only occasional contact with the public and co-workers.

The Court agrees with the Commissioner's response and the Magistrate Judge's recommendation in their entirety on this issue.

## VI.    CONCLUSION

The Court **DECLINES TO ADOPT**  Magistrate Judge Binder's recommendation;

**GRANTS** Plaintiff's motion for summary judgment to the extent he seeks a remand; and

**REMANDS** the case for reconsideration consistent with this opinion.

**IT IS ORDERED.**

S/Victoria A. Roberts_____
Victoria A. Roberts
United States District Judge

Dated: 6/18/12

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 18, 2012.

S/Linda Vertriest_____
Deputy Clerk